GEORGE G. GOBLE *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 7220)

Submitted January 13, 1932.    Decided January 19, 1932.

*Lively & Stambaugh,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for repondents.

LIVELY, JUDGE:

Compensation was refused on the ground that the applicant's disability was not caused by his injury concededly received in the course of and arising out of his employment.

Goble was working in a mine of Ronda Coal Company, and a loaded car of coal left the mine track pinning him under it, on February 6, 1931. His sons, who were working with him, and other miners lifted the car off of him, and after lying down for a while he resumed and continued his work for about thirty days when he became unable to work further, and since that time, as he claims, is wholly incapacitated. It is in evidence that while he worked after the injury, he was unable to do as much work as formerly, and that while about as much coal was loaded as usual, the sons (three of them) did most of the work. One witness, John Bickford, says "the son did all the work after it happened."

The injury was reported to the mine foreman on the day it happened. The coal company reported the injury to the commissioner who had an inspector to investigate and take affidavits. In March, 1931, McPherson, the company's physician, examined Goble and found him to be suffering from pain in his shoulders and back, and sent him to Kanawha Valley Hospital for examination which was made and X-rays taken. Dr. Ray, of that hospital, reported to McPherson that Goble was suffering from arthritis, and that the injury could have prolonged or caused it. An examination by Dr. Kessel, chief medical examiner for the commissioner, made May 10, 1931, showed no evidence of fracture of the shoulder bones or back, but showed slight crepitation indicating rheumatism. An X-ray examination by Dr. Lambert, made about the same time, showed an old fracture of the hip, which had perfectly knitted; a slight scoliosis of the lumbar spine, the bending being toward the left; but no evidence of fracture and no evidence of disease of the bones of the lumbar spine.

Dr. Kessel reported that Goble's teeth were badly infected. The commissioner refused compensation May 20, 1931, on the ground that his condition was not due to the injuries of February 6th. Goble protested the findings, a further hearing was given, and witnesses were produced and their depositions taken. Dr. McPherson's testimony at this hearing was that he found no external marks of injury at the examination in March, but found soreness in the right shoulder; that his teeth were in bad condition; that the injury could be the cause of arthritis; that from examination then made (at the time he testified) he found the shoulder muscles tender, irritated and a little swollen; that arthritis might be localized there; and that he took Goble's statement as to the soreness as true from his actions. On September 18, 1931, an X-ray was made by Dr. Stallard of Montgomery who reported the third lumbar vertebrae compressed with slight deformity, but was inclined to believe that it was not causing difficulty. He reported bad teeth. On this further evidence, the commissioner refused to disturb his order of May 20th, and an appeal was awarded from that refusal.

There is no controversy of fact. Summarizing the facts proven, they appear to be: Goble, an able-bodied man, had been working for the company for six years and had not lost a day on account of sickness; he was severely injured while working on February 6, 1931, and attempted to work until March 6th when he had to quit because of pain and suffering; that the employer reported the injury to the commissioner whose investigation showed he was suffering from arthritis which, in the opinion of the company physician, may have been produced or aggravated by the injury; and that he had bad teeth. The X-ray examinations simply showed his physical condition as above set out, indicating arthritis, but no one, except the company physician, attempts to express opinions as to its cause or the effect of the injury in producing or aggravating it.

Claimant's attorney says the finding is against the plain preponderance of the evidence, and cites *Caldwell* v. *Commissioner*, 106 W. Va. 14, 144 S. E. 568, and *Sedinger* v. *Commissioner*, 109 W. Va. 51, 152 S. E. 857. The *Caldwell*

case holds that where the injury aggravates an old wound which had healed, and thus brings about loss of time from labor, compensation should not be denied because of the existence of the old wound. The courts quite generally so hold. *Hartford* v. *Indus. Com.*, (Cal.) 163 Pac. 225. In Vol. 1, Schneider's Workmen's Compnsation Law, p. 312, sec. 138, the following quotation, which is *apropos*, is taken from the *Hartford* case: "Likewise the courts, consistent with the theory of workmen's compensation acts, hold with practical uniformity that, where an employee afflicted with disease receives a personal injury under such circumstances as that he might have appealed to the act for relief on account of the injury had there been no disease involved, but the disease as it in fact exists is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred and the disability or death does not result from the disease alone progressing naturally, as it would have done under ordinary conditions, but the injury aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the compensation acts." In accord is our recent case of *Hall* v. *Compensation Commissioner*, 110 W. Va. 551, 159 S. E. 516, which holds: "The fact that an employee, injured in performing services arising out of and incidental to his employment, was already afflicted with a progressive disease that might some day have produced physical disability, is no reason why the employee should not be allowed compensation under Workman's Compensation Act, for the injury, which, added to the disease, superinduced physical disability."

The Attorney General would uphold the commissioner's refusal on the principle of law often announced by this Court that a finding of fact by the commissioner should be treated as a finding of a judge or the verdict of a jury, and will not, as a general rule, be disturbed if there is substantial evidence to support it, citing *Watkins* v. *Compensation Commissioner*, 109 W. Va. 409, 157 S. E. 89; *Kincannon* v. *Ott*, 108 W. Va. 428, 151 S. E. 311, and kindred cases. It must be remembered in the instant case there is no dispute of fact.

The commissioner's conclusion from the undisputed facts is at issue. Was he warranted in concluding that the injury did not cause or aggravate arthritis? Our cases of *Poccardi* v. *Public Service Commission*, 75 W. Va. 542, 84 S. E. 242 L. R. A. 1916A, 299, and *Caldwell* v. *Commissioner, supra*, say he was not so warranted. We held in the *Poccardi* case in Syl. 3: "It is the duty of the commission, under such circumstances, to give the claimant the benefit of inferences arising in his favor from the facts proved, in the absence of direct evidence." In that case, the workman was assisting in carrying a heavy "Jim Pole" and complained to the chief clerk in the machine shop that he had strained himself. He worked the next day and then went to bed from sickness. Later, he had medical attention, was taken to a hospital and operated upon for strangulated hernia, and died four days later. The postmortem examination showed dilation of the right ventricle of the heart as the immediate cause of death. A physician was of the opinion that the hernia was caused by the lifting of the "Jim Pole," and on this state of facts the court said an accidental injury was established and that his dependent was entitled to compensation, reversing the order of the commission, which had drawn a different conclusion from undisputed facts. The claimant is entitled to all reasonable inferences in his favor from undisputed facts in support of his claim, as would be accorded to him upon a demurrer to his evidence. On this well settled principle of law, we reverse the order, and remand the case for such compensation as the facts warrant.

*Reversed.*