15473

CROMER v. NEWBERRY COTTON MILLS *ET AL.*

(23 S. E. (2d), 19)

352

354

356

See, also, 71 C. J., 1441.

See 71 C. J., 1432, Section 1387.

\* \* \*

358

362

*Messrs. Haynsworth & Haynsworth,* of Greenville, Counsel for Appellants,

*Mr. R. Aubrey Harley,* of Newberry, and *Mr. Sol Blatt,* of Barnwell, Counsel for Respondent,

November 28, 1942.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

This case comes to us upon the eleven exceptions of the appellants to an order of the Honorable E. H. Henderson, presiding Judge, upon an appeal in the Court of Common Pleas of Newberry County, from an opinion and award of the South Carolina Industrial Commission. The facts and history of the case need not be stated here, since they are clearly and adequately set forth in the order of the Circuit Judge, dated May 30, 1942, which will be reported.

The appellants, in their brief, have stated that their exceptions to that order make for our consideration three questions, and we adopt their statement of those questions involved as follows:

"1. Does the South Carolina Industrial Commission have jurisdiction to review an award, under Section 46 of the Workmen's Compensation Act, where a Single Commissioner has previously issued an award limiting and fixing disability, in so far as the injury is concerned, to only five weeks, which award was affirmed by the Full Commission, and from which Full Commission award there was no appeal?

"2. Is the question of disability and extent of injury *res adjudicata* when a Single Commissioner makes an award finding that respondent was disabled for only five weeks as a result of the injury, and that any injury or other condition which may affect respondent after the five-week period was in no way connected with the original injury, which award was affirmed by the Full Commission, and from which Full Commission award there was no appeal?

"3. Is the Single Commissioner's award on change of condition, dated January 13, 1942, which award was affirmed by the Full Commission and by the order of the Court of Common Pleas, based on speculation, surmise and conjecture?"

The majority opinion and award of the South Carolina Industrial Commission, dated March 16, 1942, from which the defendants-appellants appealed to the Circuit Court, and which was affirmed by the order of Judge Henderson, was rendered under the provisions of Section 46 of the Workmen's Compensation Act of 1936, as amended, being Section 7035-49 of the Code of Laws of South Carolina for 1942, which reads: "Upon its own motion or upon the application of any party in interest on the ground of a change in condition, the industrial commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this article, and shall immediately send to the parties a copy of the order of the award. No such review shall affect such award as regards any moneys paid but no such review shall be made after twelve months from the date of the last payment of compensation pursuant to an award under this article."

In the case of *Cole v. State Highway Department*, 190 S. C., 142, 2 S. E. (2d), 490, this Court passed upon a question so similar to the one now before the Court that in our opinion that case is controlling here. In the *Cole case* the claimant, in the course of his employment, sustained a lacerated wound on his shin, which injury later developed into a chronic ulcer. Shortly after his injury, the claimant entered into a written agreement with the appellant, with the approval of the industrial commission, for compensation and two months later signed a so-called final compensation settlement receipt, acknowledging the payment of $13.95 in final settlement of all claims for compensation, subject to review as provided by law. Upon his return to his employment, the claimant was unable to perform heavy work and was given lighter tasks, but on account of the condition of his original wound which had never healed, he was unequal to it, and resigned his employment about October 1,

1937. On February 25, 1938, the claimant applied for a review of the award upon the ground that his wound had not healed, and that he was totally and temporarily disabled, and a hearing was held to determine the matter. Mr. Justice Fishburne, speaking for this Court in that case, said, beginning at page 146 of the State reports, at page 492 of 2 S. E. (2d) :

"It is contended by the appellant that there is no evidence sufficient in law to sustain the claim for temporary disability beyond October 1, 1937. If there is any evidence to support the award of the Industrial Commission, then its decision is final. *Rudd v. Fairforest Finishing Company*, 189 S. C., 188, 200 S. E., 727.

\* \* \* \* \*

"We agree with the lower Court that there was sufficient evidence for the commission to base its finding that, the respondent was disabled beyond October 1, 1937. Although he did resume work for a few weeks, commencing August 6th, the testimony is susceptible of the reasonable inference that his physical condition was such on account of his unhealed wound, that he was in effect still disabled. It is evident that the disability had not fully terminated, and that during the entire period he was being treated by a physician.

"The weight of authority in compensation cases leans to the view that even where an injury aggravates a pre-existing condition or disease so that the disability is continued for a longer period than would normally result from the injury alone, such disability is nevertheless compensable.

"So that the fact that the respondent had varicose veins does not defeat recovery under the facts in this case, even should it be concluded that his injury was aggravated by reason of them. *Hartford Accident & Indemnity Company v. Industrial Acc. Commission*, 32 Cal. App. 481, 163 P. 225; Schneider, Workmen's Compensation, Secs. 259, 290.

\* \* \* \* \*

"The testimony not only shows that the respondent had not recovered when he returned to work on August 6th, and

when he again ceased to work, on October 1, 1937, but the appellant knew that the disability continued, and that respondent's injury had not terminated. In fact, * * * the wound had not healed on April 13, 1938, * * *. For these reasons the position of the appellant is untenable, that the disability terminated on August 6, 1937, or on October 1, 1937. Nor is the appellant in a position under the evidence to complain that the case was reopened.

* * * * *

"It appears to be the more generally accepted rule that, where compensation has been paid and the award approved and the case closed, it may still be reopened on the grounds of a change in the employee's condition, where the question of the permanency of the injuries was not considered in the settlement; and a final receipt or a release will not preclude a review on such grounds; not even, it has been held, where the receipt recites that the disability has ceased. 71 C. J., Sec. 1470, page 1472.

* * * * *

"We think from this testimony that the Industrial Commission could reasonably have concluded that there was a change in condition which justified a reopening of the case. * * *"

In the case of *Next of Kin of Clinton Cole v. Anderson Cotton Mills et al.,* 191 S. C., 458, 4 S. E. (2d), 908, there was testimony to the effect that when the employee came to work on a certain morning he seemed well; that toward the middle of the day he complained of pain in his right shoulder, which he suffered while pulling on a wrench to tighten a nut; that he grew worse, suffering much pain, was taken to the hospital and operated on; that pneumonia developed and he died. Two physicians testified that the injury to the employee's shoulder could have caused his death. The finding of the Industrial Commission in that case was that the death of the employee resulted from an accident, within the meaning of the Workmen's Compensation Act.

In that case, this Court said at page 468 of 191 S. C., at page 912 of 4 S. E. (2d) :

"This Court cannot say that there was no evidence to sustain the finding of fact by the Commission.

"It follows that the exceptions must be and are overruled and the judgment affirmed."

In the case of *Phillips v. Dixie Stores, Inc., et al.,* 186 S. C., 374, at page 377, 195 S. E., 646, at page 647, this Court said: "* * * If there were absolutely no evidence in support of the findings of fact by the commission, we might say that the question thus becomes a question of law. But whether there is a sufficiency of evidence, is strictly a matter of fact, and the findings of the commission thereabout are final."

In the case of *Spearman v. F. S. Royster Guano Company et al.,* 188 S. C., 393, at page 397, 199 S. E., 530, at page 532, this Court affirmed and caused to be reported the decree of the Circuit Judge, in which it is stated of the State Reports: "As the outset, it should be remembered that by Section 60 of the [Workmen's Compensation] Act, which provides the right of appeal to the Courts of Common Pleas, the awards of the Industrial Commission, are 'conclusive and binding as to all questions of fact', and the courts have jurisdiction only with relation to 'errors of law under the same terms and conditions as govern appeals in ordinary civil actions.' This means, as I understand it, that the courts have jurisdiction to review awards of the Industrial Commission only where there is no substantial evidence to support the findings of fact of the Commission, or in other words that the court has jurisdiction identical with the jurisdiction of the Supreme Court in jury cases in determining whether a verdict should have been directed. * * *"

Under the language of Section 7035-49 of the Code of 1942, and for the reasons given by Judge Henderson in his order, we are of the opinion that the respondent was entitled to a review of his award, on the

ground of a change in condition. And as we have already seen, it is not the province of this Court to determine whether the greater weight of the evidence supported the finding that a change had taken place in the condition of the claimant such as would warrant an extension or enlargement of the award, or whether the greater weight of the evidence supported the finding that such change resulted from the injury of September 10, 1940. Such facts must be determined by those whose duty it is to find the facts. The duty of this Court is to determine whether there was any competent evidence in support of the findings of the fact-finding tribunal. The Transcript of Record contains the testimony of those who were in intimate association with the claimant, and it contains also the expert testimony of several physicians, and other evidence upon which the findings of fact in the case could be, and were, made by the fact-finding tribunal, and this Court is bound thereby.

This Court, therefore, affirms the judgment of the Circuit Court and adopts the order of Judge Henderson in all respects except one, in which respect that judgment for the following reasons is modified with regard to the date at which compensation should begin.

The injury to the respondent was sustained on September 10, 1940, whereupon he was taken to Dr. R. W. Houseal, who diagnosed the condition of the patient, as that of a strained back, and treated him for about five weeks, during which time the respondent was confined to his home and was unable, even when not actually confined to his bed, to perform any gainful work. The condition of the patient improved, and he was discharged from further treatment, insofar as the injury was concerned, at the end of this period of five weeks. It was for that period of five weeks, beginning at the date of his injury, and ending when he was discharged by Dr. Houseal, that the first award of compensation was made by the industrial commission.

With reference to that period of time, Dr. Houseal testified at the original hearing on December 16, 1940, before the single commissioner:

"I kept him in bed, his pain gradually decreased and after about two weeks he was able to sit up and walk about. I think after about five weeks he was very much better and had very little pain in his back.

"Q. During those five weeks would you say he was a man qualified to do manual labor? A. No.

"Q. After the five weeks would you say he could do manual labor as of course you know his job in the cotton mill? A. Yes.

"Q. Would you say he was able to do that sort of labor? A. I did not see very much difference between his condition at the end of five weeks and probably it was before he got sick."

At the end of that period of five weeks, the condition of the claimant was so much improved that for the next ensuing four weeks he was able to do such work at his home as bringing in and stacking wood, feeding the cow, and performing other household chores. This improved condition, which lasted for four weeks, ended nine weeks after the injury.

At the same hearing at which Dr. Houseal testified as quoted above, other witnesses testified as to the condition of the respondent from the time of the injury down to the date of that hearing on December 6, 1940. Upon the testimony given on that date, covering the entire period of time since the injury to the respondent's back, the single commissioner found that the respondent has "sustained an injury by accident arising out of and in the course of his employment, resulting in a strained back, which disabled him five weeks, beginning September 10," and "that any disability or other condition which may affect Mr. Cromer, since the five-week period, beginning September 10, is due to conditions in no way connected with the injury of September

10." The respondent was accordingly awarded compensation for five weeks beginning September 10, 1940. This ruling and award were later reviewed, adopted and affirmed by the majority of the full commission, from which later opinion and award there was no appeal.

On April 21, 1941, the respondent, through his attorneys, made a request, under Section 46 of the Workmen's Compensation Act, that the case be reopened because of a change in the condition of the respondent, and requested that the industrial commission appoint a physician to examine him. The commission accordingly ordered respondent to report to Dr. E. F. Zemp, on June 10, 1941, for examination.

Upon that examination, it was found by Dr. Zemp that the respondent was then totally disabled, and, among other things, that: "About 9 weeks after the injury he evidently had a cerebral accident, probably due to an embolus. This affected his eyes and speech in particular. The embolus was in the form of a 'stroke,' * * *" Dr. Zemp also found in that examination that the condition of the respondent, as it then existed, was due, among other things, to "certain *sequelae,* resulting from the cerebral accident occurring 9 weeks after the injury."

At the subsequent hearing before the single commissioner on September 24, 1941, when the case was reviewed under Section 46 of the Workmen's Compensation Act, Dr. Zemp testified that in his opinion the respondent: "Had some lesion in the brain that happened nine weeks after his accident, that was in the form of a stroke, I would say. Whether it was an embolus or thrombus or rupture of a vessel, I could not say, but he had some lesion in the brain around what we call the 'speed' center, and around that center it was not a typical one which caused some of the disability."

At the original hearing on December 16, 1940, the commissioner could not, of course, have taken into consideration the results of the above-mentioned examination, which was

not made by Dr. Zemp until six months thereafter, and naturally it was only when the case was reopened, and the evidence was disclosed revealing the cerebral accident which the respondent had sustained nine weeks after his original injury, that it could be determined that the respondent's subsequent total disability was in part due to the cerebral accident and to the *sequelae* which resulted therefrom. Furthermore, it could not have been determined at the first hearing that such a change in condition as was caused by the cerebral accident was connected with, or influenced or caused by the original injury nine weeks earlier, as is indicated by some evidence in the record of the hearing on September 24, 1941. We therefore think that the award, covering the period of time beginning at the time of the cerebral accident nine weeks after the original injury, was proper, because such accident, particularly in its relation to the original injury, was not revealed until the examination by Dr. Zemp six months thereafter, and his subsequent testimony thereabout.

But we think that the order of Judge Henderson should be modified with respect to the period of four weeks immediately prior to the cerebral accident, during which period the condition of the respondent was known to the commission, and was considered and determined in its first award. We have seen that the respondent was originally awarded compensation for the first five weeks after his injury, during which time he was, for all practical purposes, entirely disabled. But at the end of the period of that five weeks, Dr. Houseal discontinued his treatments and pronounced him able to perform his usual work. Members of respondent's family testified that he was improved in his condition and that he was able to do certain work at his home during that period. All of the facts pertaining to that period of four weeks were before the industrial commission upon the original hearing on December 16, 1940, and upon the termination of that hearing the commissioner dis-

allowed any compensation for that period, thus constituting an adjudication, in the absence of any change in condition relating to that period. The changes that have subsequently been shown in the respondent's condition took place after the expiration of the four-weeks' period of improved health, which period terminated when the respondent suffered the cerebral accident.

Therefore we are of the opinion that the Circuit Judge erred in affirming so much of the award of January 13, 1942, of the industrial commission, as provided compensation to the respondent "beginning at the date the five weeks compensation was paid him originally." The judgment of the Circuit Court is therefore modified to the extent that that portion of the award will read: "beginning at a date nine weeks after September 10, 1940."

In all other respects, all of the questions before us in this appeal have been fully discussed and, we think, correctly decided, in the order of the Circuit Judge.

Judgment modified.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES and CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, concur.